1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

9
10
11
12

ROBERT VILLA,
CDCR #J-21973,

                                        Plaintiff,

                    vs.

D. PARAMO; J. HILL; J. BURGOS;
R. TOVAR; S. EPPERSON; D. URIBE;
S. SANDOVAL; J. MORENO;
D. DEGEUS,

                                        Defendants.

Case No.      3:11-cv-2426-IEG (JMA)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6)**

**(ECF No. 32)**

13
14
15
16
17
18
19
20

## I.    PROCEDURAL HISTORY

Robert Villa ("Plaintiff"), currently incarcerated at the California Correctional Institution located in Tehachapi, California, is proceeding in pro se and *in forma pauperis* ("IFP") in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Currently pending before the Court is Defendants' Motion to Dismiss a portion of the claims found in Plaintiff's First Amended Complaint ("FAC") pursuant to FED. R. CIV. P. 12(b)(6).  (ECF No. 32).  Plaintiff has filed an Opposition to Defendants' Motion.  (ECF No. 34.)  The Court has determined that Defendant's Motion is suitable for disposition upon the papers without oral argument and that no Report and Recommendation from Magistrate Judge Jan M. Adler is necessary.  *See* S.D. CAL. CIVLR

1

1  7.1(d)(1), 72.3(e).

2  **II.      Factual Allegations**[1]

3        Plaintiff was incarcerated at Centinela State Prison ("CEN") in February and March of

4  2010. (*See* FAC at 1.) On February 9, 2010, Plaintiff was placed in Administrative Segregation

5  ("Ad-Seg") by Defendant Hill pending an investigation into whether Plaintiff was affiliated with

6  the prison's Mexican Mafia. (*Id.* at 6.) Plaintiff appeared before the Institutional Classification

7  Committee ("ICC") on February 19, 2010, which was chaired by Defendant Paramo, for initial

8  review of his classification. (*Id.*) It was determined that Plaintiff would continue to remain in

9  Ad-Seg pending the completion of the investigation into his alleged gang affiliation. (*Id.*)

10  Defendant Paramo informed Plaintiff that the staff performing the investigation requested that

11  Plaintiff be retained in Ad-Seg for up to 180 days in order that they may complete the

12  investigation. (*Id.*) Plaintiff informed Defendant Paramo that his central file would demonstrate

13  that he had no gang affiliation. (*Id.*)

14        On February 23, 2010, Defendants Burgos and Sandoval returned Plaintiff's property that

15  was confiscated when Plaintiff was sent to Ad-Seg on February 9, 2010. (*Id.* at 7.) Later that

16  evening, Plaintiff was served with a Rules Violation Report ("RVR") by Correctional Officer

17  Easler who said to Plaintiff "ISU wrote you up Villa." (*Id.*)

18        Plaintiff was in the prison law library on March 5, 2010, along with inmates Jones,

19  Encalade and Herrera. (*Id.*). Inmate Encalade asked the prison law librarian, Correctional

20  Officer Trevino, if he could request assistance from another inmate to submit an administrative

21  grievance. (*Id.*) Trevino informed Encalade that it was permissible for Plaintiff to assist

22  Encalade. Encalade handed his envelope with his paperwork to Trevino for inspection and

23  Trevino "searched the envelope for any contraband or gang related material before handing

24  Plaintiff the envelope in order for him to assist Encalade with his 602 appeal." (*Id.*) A few days

25  later, on March 20, 2010, Defendants Hill, Burgos and Sandoval interviewed Plaintiff with

26  regard to the gang investigation. (*Id.* at 7-8.) Defendants Hill, Burgos and Sandoval informed

27  Plaintiff they had insufficient evidence to retain him in Ad-Seg and they only had "two (2)

28

---

[1] The allegations are those that are set forth in Plaintiff's Complaint.

source points." (*Id.* at 8.)  In order to be retained in Ad-Seg, Defendants would need three "source points" that tied Plaintiff to gang related activities. (*Id.*)  Defendant Hill refused to tell Plaintiff what the source points were and merely told Plaintiff to "just watch yourself." (*Id.*)

Following the interview, Plaintiff was escorted to the "dog kennels for yard," during which time Plaintiff's cell was "ransacked" by Defendants Burgos and Sandoval. (*Id.*) Defendants confiscated the manilla envelope that inmate Encalade had previously given Plaintiff in the law library. (*Id.*)  The next day Defendant Sandoval came to Plaintiff's cell to inform him that they had found gang validation material in the envelope. (*Id.*)  Plaintiff explained that the information in that envelope did not belong to him, he was assisting another inmate in preparing an administrative grievance. (*Id.*)  Defendant Sandoval told Plaintiff he could not assist another prisoner. (*Id.*)  Plaintiff was again placed in Ad-Seg. (*Id.* at 9.)

Plaintiff submitted an administrative grievance several days later objecting to the rehousing in Ad-Seg and the actions taken by Defendant Sandoval. (*Id.*)  Plaintiff claims that Defendant Hill, Burgos and Sandoval retaliated against him for filing this administrative grievance by "serving Plaintiff with a prison gang validation pack." (*Id.*)  Plaintiff claims Defendant Hill stated "no, you don't understand, you guys think your smart, you can't help nobody with a 602." (*Id.*)  On March 24, 2010, Plaintiff received his response to his administrative grievance by Defendant Hill denying his request for release from Ad-Seg. (*Id.*)

Plaintiff was interviewed on March 25, 2010 with regard to his gang validation proceedings by Defendants Hill and Burgos. (*Id.* at 10.)  Plaintiff informed them that the information they found in the envelope belonged to a different inmate and he requested that they speak with Correctional Officer Trevino who gave Plaintiff permission to retain the envelope to assist the other prisoner. (*Id.*)  Defendants promised to speak to Officer Trevino. (*Id.*)  Later that same day, Plaintiff's RVR hearing was conducted with Lieutenant Rodriguez as the hearing officer. (*Id.*)  Lieutenant Rodriguez read the charges and Plaintiff plead "not guilty." (*Id.*) Plaintiff told Lieutenant Rodriguez that if he were to read the "primary officer's report from crime scene incident report" he would see that the "allegations are false." (*Id.*)

After reading the report, Lieutenant Rodriguez made a telephone call to an unknown party and stated "how do you expect me to find Villa guilty when you guys [messed] up?" (*Id.* at 11.) Plaintiff was escorted outside of the room while Lieutenant Rodriguez and Lieutenant Napolitano conferred in the room. (*Id.*) Following their discussion, Plaintiff claims Lieutenant Napolitano said "just find [Plaintiff] guilty and let him do the paperwork." (*Id.*) Ultimately, Lieutenant Rodriquez "found Plaintiff not guilty." (*Id.*)

Defendants Burgos and Sandoval returned Plaintiff's "validation rebuttal" on April 2, 2010 and informed him that his "rebuttal had no merit." (*Id.*) Plaintiff inquired as to whether they had ever spoken to Correctional Officer Trevino. (*Id.* at 12.) They indicated that they had spoken to Correctional Officer Trevino who confirmed Plaintiff's explanation with regard to the envelope that had contained another inmate's gang validation papers. (*Id.*)

An ICC hearing for Plaintiff was conducted on April 8, 2010, at which time Correctional Officer Galeana noted that Plaintiff's placement in Ad-Seg was against department policy. (*Id.*) Regardless, Plaintiff's placement in Ad-Seg was extended an additional 120 days to complete the gang investigation. (*Id.* at 13.) Plaintiff filed another administrative grievance on May 2, 2010, claiming that his placement in Ad-Seg was "unlawful" and he was being retaliated against for helping other inmates file administrative grievances. (*Id.*)

A few days later on May 6, 2010, Plaintiff appeared before the ICC again. (*Id.*) The ICC committee consisted of Defendants Paramo and Hill. (*Id.* at 13-14.) Defendant Hill informed Plaintiff that they had source materials necessary to validate Plaintiff as a gang member. (*Id.* at 15.) Defendant Hill informed him two of the source materials came from the envelope that Plaintiff received from inmate Escalade but the fourth source material "[Defendant] Tovar put there on his own." (*Id.* at 16.) Plaintiff alleges that Defendant Tovar "took it upon himself to place a false confidential memorandum dated 3-3-2010 in Plaintiff's validation pack in concert with Defendants J. Burgos and their agents." (*Id.*) Plaintiff claims another staff member, Correctional Officer Welch, "found this confidential memorandum dated 3-3-10 to be non-existent on 4-15-2010 in Plaintiff's C-file." (*Id.*)

/ / /

Plaintiff alleges that on May 7, 2010, in retaliation for filing the administrative grievance five days prior, Defendants Paramo and Hill "generated a memorandum" that was based on "false and fictitious information." (*Id.*)  In this memorandum, it is alleged that Plaintiff, along with two other inmates, "made threats against correctional peace officers." (*Id.* at 16-17.)  At the time this memorandum was generated, Plaintiff was "assisting both inmates mentioned Murillo and Encalade with their legal issues and 602 appeals." (*Id.* at 17.)

On May 13, 2010, Defendant DeGeus "interviewed Plaintiff concerning [the] 602 submitted" on May 2, 2010. (*Id.*)  Plaintiff claims Defendant DeGeus stated that he read Plaintiff's appeal and told him, although he found his due process rights were violated, DeGeus could not release Plaintiff from Ad-Seg due to the fact Plaintiff was a validated gang member. (*Id.*)  Defendant DeGeus told Plaintiff he would "speak with Warden Uribe about this right now." (*Id.* at 17-18)  Later that day, Defendant Uribe prepared a memorandum to have Plaintiff transferred which Plaintiff claims was in retaliation for his "constitutional right to file prison grievances." (*Id.* at 18)  Plaintiff was transferred to California Correctional Institution on May 21, 2010 and retained in Ad-Seg. (*Id.*)

### III.   Defendants' Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6)

Defendants move to dismiss Plaintiff's Complaint on the grounds that: (1) Plaintiff failed to state a retaliation claim as to Defendants DeGues, Epperson and Moreno; (2) all claims against Defendants in their official capacity should be dismissed; and (3) Plaintiff has failed to allege a Fourteenth Amendment due process claim.

### A.   FED.R.CIV.P. 12(b)(6) Standard of Review

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  In other words, the plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Id.* (citing FED.R.CIV.P. 8(a)(2)).  "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests."

1    *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks

2    omitted).

3          A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state

4    a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

5    (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

6    court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

7    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

8          The court need not, however, accept as true allegations that are conclusory, legal

9    conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden*

10    *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal,* 556 U.S. at 678 ("Threadbare recitals

11    of the elements of a cause of action, supported by mere conclusory statements, do not suffice.");

12    *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal

13    conclusion couched as a factual allegation."). "The pleading standard Rule 8 announces does

14    not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-

15    unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

16    Thus, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual

17    enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

18          However, claims asserted by pro se petitioners, "however inartfully pleaded," are held

19    "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404

20    U.S. 519-20 (1972); *Erickson*, 551 U.S. at 94. Because "*Iqbal* incorporated the *Twombly*

21    pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings, [courts] continue

22    to construe pro se filings liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d

23    338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)

24    (noting that courts "have an obligation where the petitioner is *pro se*, particularly in civil rights

25    cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.")).

26          Nonetheless, in giving liberal interpretation to a pro se civil rights complaint, the court

27    may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of*

28    *Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory

allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*

**B.     Eleventh Amendment**

All Defendants seek dismissal of Plaintiff's claims against them in their official capacities.  While the Eleventh Amendment bars a prisoner's section 1983 claims against state actors sued in their official capacities, *Will v. Michigan Dep't of State Police*, 4[91] U.S. 58, 66 (1989), it does not bar damage actions against state officials sued in their personal or individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Pena v. Gardner*, 976 F.2d 469, 472-73 (9th Cir. 1992).

When a state actor is alleged to have violated both federal and state law and is sued for damages under section 1983 in his individual or personal capacity, there is no Eleventh Amendment bar, even if state law provides for indemnification. *Ashker v. California Dep't of Corrections*, 112 F.3d 392, 395 (9th Cir. 1997).  Plaintiff brings this § 1983 suit against Defendants in both their individual and official capacities.  (*See* FAC 2-5.)  The Supreme Court has made it clear that a plaintiff can establish personal liability in a section 1983 action simply by showing that each official acted under color of state law in deprivation of a federal right. *Hafer*, 502 U.S. at 25.

Consequently, the Court **GRANTS** Defendants' Motion to Dismiss on Eleventh Amendment grounds–but only to the extent that Plaintiff seeks damages against them in their official capacity.  The Eleventh Amendment imposes no bar to Plaintiff's damages action against any of the named Defendants for acts or omissions alleged to have been taken in their personal capacities.  *See Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995).

**C.     Retaliation claims**

Defendants Epperson, Moreno and DeGeus move to dismiss Plaintiff's retaliation claims against them.  Of fundamental import to prisoners are their First Amendment "right[s] to file prison grievances," *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to "pursue civil rights litigation in the courts." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). Without those bedrock constitutional guarantees, inmates would be left with no viable

7

mechanism to remedy prison injustices. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.* (citing *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995)).

"[A] viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68 (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994)).

Defendant DeGeus moves to dismiss the retaliation claims against him because he argues that Plaintiff cannot allege that Defendant DeGeus took any "adverse action" against him. (Defs.' Memo of Ps &As in Supp. of MTD at 6.)  Defendant DeGeus is alleged to have interviewed Plaintiff regarding an administrative grievance he had filed.  (*See* FAC at 17.) Plaintiff alleges Defendant DeGeus acknowledged that Plaintiff's due process rights were violated but he could not release him from Ad-Seg due to his gang validation. (*Id.*)  Defendant DeGeus then told Plaintiff that he would "speak with Warden Uribe about this right now." (*Id.*) A few days later, Plaintiff received notification that Defendant Uribe was transferring him to another prison.  (*Id.*)

The Court agrees that Plaintiff has not alleged that Defendant DeGeus took any "adverse action" against Plaintiff. *Rhodes*, 408 F.3d at 567-68.   In order to prevail on a retaliation claim, Plaintiff must show that his "protected conduct was a 'substantial' or 'motivating' factor" behind the defendants conduct." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (1989).  Here, Plaintiff's allegations demonstrate that Defendant DeGeus appeared to be agree with the claims raised in Plaintiff's administrative grievances.   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 570.  Here, there are no facts to show that Defendant DeGeus

8

1   participated in any way with the decision to transfer Plaintiff, and thus, he has failed to allege

2   facts sufficient to state a retaliation claim against Defendant DeGeus.

3        Defendants Epperson and Moreno also move to dismiss the retaliation claims against

4   them.  (*See* Defs.' Memo of Ps & As in Supp. of MTD at 5-6.)  The only instance in Plaintiff's

5   entire First Amended Complaint where he even mentions either of these Defendants by name

6   is found  when Plaintiff claims "[o]n 4-20-10, Defendants Steven Epperson and James Moreno

7   validated Plaintiff [knowing] that Plaintiff was assisting Encalade with 602."  (FAC at 20.)

8   Here, while Plaintiff alleges an "adverse action," he fails to allege any other elements of a

9   retaliation claim as to these Defendants.  Thus, the Court finds that Plaintiff has failed to allege

10   a retaliation claim as to Defendants Epperson and Moreno.  *See Iqbal*, 556 U.S. at 678

11   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

12   statements, do not suffice" for purposes of surviving a motion to dismiss.)

13        Accordingly, the Court **GRANTS** Defendants DeGeus, Epperson and Moreno's Motion

14   to Dismiss Plaintiff's retaliation claims against them pursuant to Fed.R.Civ.P.  12(b)(6).

15       **D.**    **Fourteenth Amendment Due Process**

16        Defendants seek to dismiss Plaintiff's Fourteenth Amendment due process claims that he

17   brings for the alleged violations that occurred in placing him in Ad-Seg.  (*See* Defs.' Memo of

18   Ps & As in Supp. of MTD at 7-8.)  The Due Process Clause of the Fourteenth Amendment

19   prohibits states from "depriving any person of life, liberty, or property, without the due process

20   of law." U.S. Const. Amend. XIV.  The procedural guarantees of due process apply only when

21   a constitutionally-protected liberty or property interest is at stake.  *See Wolff v. McDonnell*, 418

22   U.S. 539, 557-58 (1974) In order to invoke the protection of the Due Process Clause, Plaintiff

23   must first establish the existence of a liberty interest.  *Sandin v. Conner*, 515 U.S. 472 (1995).

24   In *Sandin*, the Supreme Court "refocused the test for determining the existence of a liberty

25   interest away from the wording of prison regulations and toward an examination of the hardship

26   caused by the prison's challenged action relative to the 'basic conditions' of life as a prisoner."

27   *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (citing *Sandin*, 515 U.S. at 484);

28   *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002) (noting that *Sandin* abandons the

mandatory/permissive language analysis courts traditionally looked to when determining whether a state prison regulation created a liberty interest which required due process protection).  Due process protections are implicated if Plaintiff alleges facts to show that Defendants:  (1) restrained his freedom in a manner not expected from his sentence, and (2) "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Defendants argue that Plaintiff has failed to allege facts sufficient to show that his placement in Ad-Seg was "aytypical and significant" as required by *Sandin*.  (*See* Defs.' Memo of Ps & As in Supp. of MTD at 7-8).  Specifically, Defendants argue that "Plaintiff has not alleged that his short-time retention from February 9, 2010 (FAC ¶ 57) to March 23, 2010 (FAC ¶ 13) imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life." (*Id.* at 8.)  First, the Court has reviewed the two paragraphs in Plaintiff's First Amended Complaint which the Defendants rely upon to show that his Ad-Seg retention was "short-time" and cannot come to the same conclusion.  In neither paragraph does Plaintiff ever say he was released from Ad-Seg and returned to general population.  In fact, Plaintiff clearly states that "at all times relevant to this case, Plaintiff has been administratively segregated in Administrative Segregation ("Ad-Seg")." (FAC at 6.)        Plaintiff confirms this time frame in his Opposition in which he states, "contrary to counsel's statement for Defendants," Plaintiff has been "administratively segregated since February 9, 2010 till present day." (Pl.'s Opp'n at 8.)

According, because the Court finds that Plaintiff's placement in Ad-Seg for the last two years satisfies *Sandin's* "atypical and significant" requirement, Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment Due Process claims is **DENIED** pursuant to FED.R.CIV.P. 12(b)(6).

## IV.    Conclusion and Order

Based on the foregoing, the Court hereby:

1)      **GRANTS** Defendants' Motion to Dismiss Plaintiff's claims for money damages against them in their official capacities with prejudice.

11cv2426 IEG (JMA)

1   ///

2        2)      **DENIES** Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment due

3   process claims pursuant to FED.R.CIV.P. 12(b)(6); and

4        3)      **GRANTS** Defendants DeGues, Epperson and Moreno's Motion to Dismiss

5   Plaintiff's retaliation claims against them pursuant to FED.R.CIV.P. 12(b)(6). The Clerk of Court

6   is directed to terminate these Defendants from the docket.

7        **IT IS FURTHER ORDERED that:**

8        Defendants Paramo, Hill, Burgos, Tovar, Uribe and Sandoval shall serve and file an

9   Answer to Plaintiff's First Amended Complaint within the time prescribed by FED.R.CIV.P.

10  12(a)(4)(B).

11       **IT IS SO ORDERED**.

12  `

13  DATED: August 10, 2012          _____

14                                  HON. IRMA E. GONZALEZ
                                    United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28